182235 Richard J. Lyman et al. v. Charles D. Baker et al. Good morning, Mr. Boies. Good morning, Your Honor. My name is David Boies, and I represent the plaintiffs and appellants here. And with the Court of Commission, I'd like to reserve four minutes of my time for rebuttal. You may. I begin, unless the Court has a different order that it prefers, with two defenses that the State raises to avoid dealing with the underlying merits of our Equal Protection and First Amendment claims. The first is that they claim that because the Constitution gives the power to appoint electors to the State legislature, that this is beyond the scope of this Court's ability to adjudicate the dispute. And that's sometimes raised as a question of standing, but sometimes raised as a case of judicability. We think that argument is foreclosed by every case that the Supreme Court has considered, either in dealing with multi-member districts, at-large voting, or the appointment process for presidential electors. From the McPherson against Barker case to Bush v. Gore, the Supreme Court has repeatedly said that the appointment process is subject to constitutional constraints. That is why the legislature has the power. It also said, and I quote, the appointment and mode of appointment of electors belongs exclusively to the States under the Constitution of the United States, end quote. Yes, but what the Court then goes on to say is that when the power to appoint electors is given to the people, or is subject to a voting process, that process has to conform to constitutional guarantees, even in the Williams case that they relied on. Counsel, this argument that you're concerned about, it really hasn't gotten traction anywhere. I mean, I know you're being thorough in addressing it, but it appears that the type of claim that you're bringing forth has not been, the Court has not avoided addressing the merits on grounds of standing, for example. I don't see where the argument has gotten traction anywhere. I agree with that, Your Honor. They do raise that as their first argument in their brief. I understand. Yes, I understand. So could a State, in terms of the plenary powers or how plenary they are under the Constitution, subject to the 14th Amendment, could a State decide that their legislature is going to pick their electors? I think the State could decide that the legislature was going to pick the electors, but if they did that, for example, they would have to follow the constitutional constraints, limitations of the 14th and First Amendments. So I think the logic of your argument would be that if the State decided under the Constitution we have a right to pick the electors, we're going to do it, they couldn't just vote for a single slate of electors, or they couldn't vote individually on each elector. They would actually have to change the constitutional procedures for the State in terms of how it made decisions such that the electors ended up being representative of the dispersion or the distribution of political sentiment within that State. I think that's your argument. Your Honor, I'm not sure we would go quite that far. But I don't see the difference between that and how far you want us to go when the State has decided instead of having the legislature do it, we'll do it by plebiscite. For example, in Bush v. Gore, what the Court said there was that while the legislature, the State, could have simply gone out and appointed the electors, once they had decided they are going to have a vote that is going to be a process for selecting or appointing the electors, then they have to follow certain constitutional procedures that they didn't have to give. The Court in Bush v. Gore is very clear. They didn't have to give the voters of the State of Florida any role in selecting the electors. But if they gave the voters of the State of Florida a role, that role had to be exercised consistent with constitutional guarantees. So, sure, let's accept that. They couldn't say, we're going to have a vote, but only people of a certain race can vote. They couldn't do that. No, they couldn't do that. But why couldn't they say, every person gets one vote, one vote, one person, pick your president, and our State's electors, that's who we'll go to. And it was just like the legislature itself could have. Right. And that's where you get to Gravy-Sanders and footnote 12 that we argued a lot about. But Gravy-Sanders, prior to footnote 12, expressly says it's not dealing with electors for the president. That is not dealing with electors for the president. But what it is dealing with is it's dealing with the constitutional constraints on the way elections take place. The court is exactly right that Gravy-Sanders is not a presidential electors case. But what it is is it's a 14th Amendment case. And what the court in Bush v. Gore says is the 14th Amendment standards and principles apply to the appointment of electors. And indeed, the Williams case itself says that as well. So what you do is you take the 14th Amendment principles from cases like Gravy-Sanders and Whitcomb v. Chavez, and you apply it as Bush v. Gore and as McPherson and as Williams says has to be done to the appointment of electors. Counsel, what I'm trying to understand is where the voter dilution, which is I think the basis of your equal protection claim, where that comes from because it seems to me that initially everybody has one vote towards the selection of the presidential candidate of choice. Then if their vote is among those in the minority, they don't actually gain the majority of votes for a candidate. The majority rule prevails. But until that point, every vote has counted the same. It's not like the case out of Georgia where a vote did count less depending on geography. There's none of that in this case. So I'm struggling to find out where the dilution comes from. But even in the Georgia case, what the court said in footnote 12 is that even if there had been equality of representation, it still would have been a 14th Amendment problem. Excuse me, but didn't the Supreme Court with respect to footnote 12 later clarify that even with that amended procedure described in footnote 12, you would still have voter dilution based on geography, less dilution but still dilution. That's the Gordon case. I think you need to look at what the court says in Gordon. Because what the court is saying in Gordon is the geographic aspect of it is because the vote is discarded based on where the voter is. The Gordon case expressly cites footnote 12. It's talking about footnote 12 there. And what it's saying is that if you happen to be in a county where you are in the minority, your vote gets discarded. Whereas if you were in some different county where you were in the majority, it could get counted. The geographic reference in Gordon does not diminish what the court was saying in Gray against Sanders. It simply reflects the fact that when you are in a minority in a county where you happen to be in a county in which you are in a minority, your vote gets discarded and doesn't count. It is not rejecting the analysis in Sanders, I suggest. It is simply describing it in a way that takes into account the fact that whether you are in a majority or a minority depends on the county in which you live. And somebody who is in a minority, for example, in Massachusetts, and to take it to this particular case, if you are a Republican in Massachusetts, you know today that your vote is not going to count for President of the United States in 2020. Well, that's only true if you are not successful in getting a majority vote. But you have every opportunity to try to achieve that majority status, and your vote doesn't count any less towards that end. It doesn't diminish your ability to vote. And if a majority of people voted Republican, then the Republicans would win. But remember, and this is of course at a motion to dismiss stage, and all you have is our allegations. But certainly our allegation, and we think they are allegations that we can prove at trial, are that the fact of the matter is that in presidential election after presidential election after presidential election over the last more than a quarter century, the Republicans have been and will be in 2020 in the minority. And that is something that people in the real world take into account and understand. And that affects both whether their vote is going to be counted, and it affects in terms of our First Amendment argument, whether they have the ability to actually come together and have a meaningful outcome. How do you get exactly how this election is different in outcome than any regular election which one party loses over another party? Explain that to me. Yes, Your Honor, and I'll try to do it very briefly so I don't eat up my bubble time. What it is is this is a two-step election. I understand that. What happens is you're not simply voting for people and the winner wins. What you're doing is you're voting for electors that are then going to take a second step. And the electors are not going to play any role. Massachusetts law forbids them to play any role other than simply casting the ballots. So what has happened is you have, as the Court says in Gray v. Sanders, discarded all of the minority voters in that second step. But in every election, the winning takes all. One of the elections is over. That is why in every case involving at-large elections or multi-district elections, the Court has ruled that it's a question of fact as to how it actually operates. And the facts, as alleged in the complaint, is that this operates to deprive the minority of the ability to participate in the second step of the election. Counsel, these... I'm sorry, please go ahead. I mean, suppose the election no one gets a majority in the Electoral College, so it goes to Congress. Doesn't each state only get one vote in Congress? And if that's the case, that has the same effect. It wipes out the... You would be able to say in that circumstance that Republicans in Massachusetts or Democrats in Oklahoma, their vote doesn't count because their state is going to exclusively vote for one candidate. Yes, and when it's specified in the Constitution, that obviously controls. Well, no, but your argument is that the plenary power granted under Article II for the states to decide Electoral Colleges now gets modified by the Equal Protection Clause, so that argument could apply to the vote in Congress as well. The Constitution trumps the direct command as to how... I don't think the 14th Amendment would apply to the congressional provision there. But I think the Court has held that the constitutional requirement does apply to the state's appointment of electors. Thank you. Thank you. Ms. Spector, good morning. Good morning, Your Honor. Amy Spector, Assistant Attorney General for the Governor and Secretary Belden. The plaintiffs make much of their theory is based on the concept of discarded or canceled votes, but the Court explained in Whitcomb that, and I quote, absent invidious discrimination such that a group is denied the opportunity to participate in the process, a claim of canceled votes is really just a euphemism for a political defeat at the polls. Massachusetts's winner-take-all system does not set up any barriers to participating, and plaintiffs cannot plausibly allege that they're subject to invidious discrimination. Their theory, in effect, is premised on the notion that we should get rid of plurality voting and we should adopt a system of proportional representation. But the Supreme Court has consistently rejected that. The plaintiffs may not like our current system as a policy matter, and they're free to air their views, but they should focus their efforts on either legislative solutions or a constitutional amendment or perhaps trying to get the National Popular Vote Compact enacted. They simply do not state a cognizable claim. With respect to the vote dilution cases, those cases simply do not undermine the Williams case, which does foreclose plaintiffs' claims. The court in Mobile v. Bolden said it was, and I quote, obvious. It was obvious that a plurality system, which operates in the same way as winner-take-all, does not dilute votes in the sense in which that word was used in the Reynolds case. The vote dilution cases simply do not support the plaintiffs' argument. For one thing, they ---- Mr. Boies was correct that you pretty aggressively put forward a standing issue, do you not? Isn't that correct? I don't know if it was aggressive. We did put forward a standing argument, and we do think that this court could affirm on the basis of standing alone. I think this is relevant. But who would have standing to bring this claim if these particular plaintiffs do not? Well, it's not actually clear that anyone would have standing, but I think that ---- Well, that's problematic, is it not? It's not problematic, but I think the court has said that the fact that nobody has standing does not convert a meritless claim to one with merit. But the reason no one has standing ---- The reason that no one has standing is that there isn't a cognizable injury. Well, that's ---- You're incorporating the merits position into your standing argument with that very statement, and that's really what you do in your brief, don't you? There is an overlap. There is an overlap, and yet also there is a definable way in which the court could resolve the issue on standing alone simply because there is not a particularized enough injury. But with the court's permission, I'd like to devote my time focused on that. It's your time. You can use it as you wish. You have standing. Thank you, Your Honor. The vote dilution case is underscored to begin with that there is no equal protection violation unless there's evidence of invidious discrimination. And, I mean, those cases that found an equal protection violation did so on the basis of deep-seated racial animus. For example, White v. Register considered the effect of a poll tax and I think what it referred to as the most restrictive voter registration provisions in the country. Those kinds of provisions kept voters out of the process. They erected a barrier that prevented voters from participating in the first place. It's simply far-fetched to equate the plaintiff situation here with the circumstances in cases like White. The plaintiffs have won the popular vote in two out of the ten most recent presidential elections. One of the plaintiffs is a former governor now running for president. The defendant is a current governor. So there's every indication that Republicans can win statewide elections in Massachusetts. Well, but what does that have to do with your analysis? We could certainly assume for purposes of 12b-6 that there are states like Massachusetts. With certainty, if we follow the plausibility of their argument, it is so unlikely as to go in a certain direction that at least the premise of the argument we have to deal with, don't we? The premise of the argument, yes. But, I mean, to begin with, I don't think the plaintiffs are better at anyone else than predicting the results of the election. So the fact that they may not have won the last election in Massachusetts really doesn't necessarily speak to what's going to happen. Shouldn't your argument be none of that's relevant? I mean, who happens to have had electoral success over the last quarter century, 50 years, whatever? That's really not relevant at all, is it, from your point of view? It's not relevant because there is no invidious discrimination here. I think in one of the companion cases in Texas, the court, I think, said it very well when it said the fact that one candidate will lose by virtue of receiving fewer votes and that her supporters may then be dispirited is an inescapable reality of democracy. I mean, that's what we have here. We have the Republicans in some recent elections have not garnered sufficient popular votes to get all of the electors, while they have in some past elections. That's what we're talking about. And to equate that situation with the kind of deep-seated, entrenched, systematic, invidious racial animus that was at issue in the Supreme Court's vote dilution cases is really a stretch. It's surprising, to put it mildly. One of the cases that the plaintiffs cite, the Rogers case, like White, similarly involved poll tax, the literacy test, and what the court referred to as the lingering effects and the legacy of invidious racial discrimination. I'm surprised no one has brought up the Supreme Court's recent decision on gerrymandering and its disinclination to have the federal courts, well, more than disinclination, prohibition, really, against the federal courts getting involved in partisan gerrymandering disputes. I suppose you would say that just strengthened your argument here. Is that correct? Your Honor, we're not actually arguing that this issue is non-justiciable, because the holding in Rucho really was that there were no manageable judicial standards by which the court could evaluate political gerrymandering claims. There was no way to determine how much is too much, how much is too much unfairness. That's not our argument here. We think that there are discernible standards, but the plaintiffs simply have failed to allege a violation of the Equal Protection Clause or the First Amendment. Well, in fact, the knowledge that political gerrymandering is now untouchable by the courts, doesn't that actually increase the potential for winner-take-all to result in unusual results as compared to the actual disposition of sentiment within the electorate as a whole? I'm sorry. Sure, because now with partisan gerrymandering, you can take one party and lump them all in one area no matter how contrived and have 51 percent of your party in the other areas, and then you throw winner-take-all on top of that. That 51 percent is worth just as much as the 95 percent. So you've exacerbated the problems that they're just policy problems that the plaintiffs point to in this case from winner-take-all. Well, I'm not sure that the gerrymandering has to do with districts. So far as the winner-take-all, there's a statewide election. I'm not sure that there's an overlap between those. At its heart, the plaintiff's claim really rests on the notion that the court should require Massachusetts to adopt a proportional method of allocating its electors, but the Supreme Court has said consistently that there is no constitutional right to proportional representation. In the Mobile case, and I quote, the court has sternly set its face against the claim, however phrased, that the Constitution somehow guarantees proportional representation. There simply is no equal protection violation here where everyone has an unfettered opportunity to participate. The Massachusetts system is eminently reasonable. It's the system that 48 states, really all of the states, are using in one form or another. The only disadvantage that the plaintiffs are suffering is the disadvantage that flows from voting for a losing candidate. That's not an equal protection violation. And plurality voting is the predominant method of deciding elections in our system of democracy. So again, if the plaintiffs are displeased with that system, they should focus their efforts on either legislative or constitutional change. Unless the court has any further questions, I'll rest on my brief. Thank you. Thank you, Your Honor. Let me begin by addressing the issue as to whether the equal protection cases are exclusively dealing with racial and invidious discrimination. Case after case, Fortson v. Dorsey, at page 439 of the official report, the Supreme Court says it is multi-member districts can violate the Constitution if, by design or otherwise, they minimize racial or political elements. Burns v. Richardson, same thing, racial or political elements of the voting population. Whitcomb, that counsel just cited, again, this is at pages 143 and 144 of the official report, talks about racial or political elements being minimized. Rogers v. Lodge, page 616 of the official report. Again, a distinct minority, whether it be a racial, ethnic, economic, or political group. Any of those constitutes a violation of equal protection. So what about the Green Party? With 3, 4, or 5% of the vote, they get no representation in virtually anything. Shouldn't they get 4% of the state legislature? No, and we're not arguing for proportional representation at the legislatures. But you're arguing if there can be equal protection violation for discriminating against a political minority, they're a political minority, you're also arguing that a sign of discrimination is that your vote gets discarded in the procedures used because only the majority takes all. Those doctrines would seem to apply to the Green Party's lack of representation in anything. It is the two together. And we're not saying it's unconstitutional to have some kind of threshold, whether it's 10%, 15%. What about 50%? What we're saying is when you get to 50%, that's a reasonable threshold. And that's what the court says. Now this starts to sound like a justiciability problem, because if you're saying you're not arguing for a threshold, so 4% is okay, well, 20% is okay, but 50 isn't, then we get into a Roush type situation of how do we pick which is the proper threshold? And I think the first answer is that you don't do that at the motion to dismiss stage. Counsel, isn't it true? I'm sorry, please finish your answer. Ultimately, the logic of your argument is that the only solution that would satisfy you would be a proportional representation in the selection of electors. That is your objective. That does seem to be the logic of your argument. That is the only remedy that meets your concerns, and as you would put it, meets the equal protection requirements. In a two-step election process, and leaving aside whether there is some appropriate threshold, which I think is an issue of fact, not appropriate for a motion to dismiss stage, but leaving just the threshold question aside, I think the court is exactly right. Where you have, and this is what Greg Sanders talks about, where you have a two-step process where you are, in effect, electing electors. You can't discard the votes at the first stage. That is quite different from the question of what happens when you are electing somebody who's going to be a governor, a senator, a legislator, where it's a one-step election. There, there's a winner and there's a loser. And here there's a winner and a loser, too. There is a winner and a loser in the president of the United States. Well, also, first, you're electing not the president, you're electing the elector. Except that today in Massachusetts, that was true. That was true for a very long time in this country. That's what the founders anticipated. People would elect electors and the electors would then meet, think about it, and elect a president. And for many years after that no longer happened, it was still the case that the electors were elected themselves. Individuals, electors, were elected and they had the ability, even though they didn't exercise it generally, they had the ability to actually make their own decisions. In Massachusetts that is no longer the case. In Massachusetts, the electors do not even appear on the ballot. These people are not being, as a practical matter, elected to anything. Their names do not appear on the ballot. They are prohibited by law from exercising their choice. What has happened is that time has converted this process from a situation in which the electors were actually people that were elected and given responsibilities to a point where they are simply a way station, a ministerial act on the way to electing the ultimate candidates, which are the presidential and vice presidential candidates. And that's what makes this different from proportional representation in the legislature or all of the other kinds of issues that are raised. And what the court said in Bush v. Gore is that when you're dealing with questions of voting and how votes are counted and measured and implemented, there is not a requirement for invidious discrimination. Invidious discrimination will make out an equal protection. I thought we were told that Bush v. Gore is not a precedent for anything. Well, I have some familiarity. I do. And I've read that particular portion. And I think that it is probably the case that the Supreme Court and all of us hope that that does not get repeated. But I think the principles that Bush v. Gore articulates are principles that are applicable. And I think the principle that they talked about in Bush v. Gore was that when you have an issue, it goes to the heart of our democratic process as to how votes are going to be counted and how people are going to how the president is going to be elected. Invidious is not a threshold requirement. Invidious is sufficient, but it's not a necessary component of that kind of claim. And I think that where the system has developed the way it has, where people who vote in Massachusetts are voting for the president of the United States, they're no longer voting for electors because those electors aren't even on the ballot. Who picks the electors? The people that will exercise that function. How are they picked? They are picked through the process of voting for the presidential candidates. In other words, each presidential candidate has a slate of electors. The names of those people never appear on the ballot. They have no power. Massachusetts has taken that power away from them. They are committed by law to vote for the person who has put them on the slate. This is as much and indeed more of a two-step election than what the Supreme Court condemned in Gray v. Sanders. What has happened is just as the losing voters, in that case voting for governor, voting for statewide offices, were discarded when you moved beyond the county, here they're discarded when you move beyond the state. And where you have what is now universally and certainly in Massachusetts, an election not for electors but an election for the president. That two-step process violates the Equal Protection Clause and for the reasons stated in our brief, our First Amendment as well. I don't think I've made myself clear. Maybe I should look it up myself. I apologize, Your Honor. Who casts the votes in the electoral college for Massachusetts? Who? Person or persons or procedure? I don't know their names and the names are never known by the voters, but they are the people who have been selected by the presidential candidates. In other words, every election, each presidential candidate will have a slate of electors. The presidential candidate will know those names. And the Secretary of State of Massachusetts will know those names. The voters of Massachusetts never know those names. The voters of Massachusetts simply vote for the presidential candidate, but whoever is the winning presidential candidate in Massachusetts, those electors who that candidate has selected will then be the people who will sign the electoral college ballots, if that answers the Court's question. Thank you. Thank you, Your Honor. Just a minute.  All right. Can you hear me now? Well, this is not normal procedure since he has exceeded his time by seven minutes. Does the other party wish to be heard in response? Thank you, Your Honor. Just very briefly. Yes, it will be brief. It will, especially now. I just want to respond to a couple of points. Gray v. Sanders was a case about geographic discrimination, as Your Honor, Judge has suggested. The court in Gordon v. Lance confirmed that. Including just last year, the Ninth Circuit in Short v. Brown. So whatever other issues were stated in that footnote, the case is about geographic discrimination, and the plaintiffs have not and can't allege that here. Mr. Boies made the point, citing cases, that invidious discrimination is not simply about race. He quotes language, race or political. How do you respond to that point? Well, that language is, I mean, he's accurately quoting those cases. But those cases concerned, when they use that language, they're talking about invidious discrimination that creates barriers to participation. And that's simply not the case here. Those cases are concerned with things like the poll tax, registration restrictions, some of the cases, again, the Rogers v. Lodge case talks about severe discrimination, even extending to the education system. So it was sort of a widespread societal discrimination manifest in things like the poll tax and literacy tests, things that really prevented people from getting out to the polls. That's just completely different from what we have here. So I just wanted to make that point. And in addition, we didn't discuss Williams, but Williams also forecloses their claims in addition to the other reasons set forth in our brief. Thank you. Thank you. Thank you.